The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Alston. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. A Form 21 agreement was entered into between the parties on November 7, 1989 which was approved by the Industrial Commission on January 12, 1990.
2. At the time of the injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. At the time of the injury giving rise to this claim, an employment relationship existed between the plaintiff and the defendant-employer.
4. The Hartford Accident and Indemnity Company was the compensation carrier on the risk.
5. The parties by agreement submitted a specified packet of medical records and documents which are collectively marked as Stipulated Exhibit Number 1.
6. The deposition of Dr. James E. Rice taken on December 15, 1994 consisting of 36 pages with attached exhibits has been stipulated into evidence.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of this hearing, the plaintiff was a forty-six year old male. The plaintiff was employed by Universal Packaging as a feeder in the finishing department. The feeder position consisted of lifting cardboard cartons off of a pallet and feeding them into machines where a wax coating was applied to the cardboard. On July 18, 1989, the plaintiff was emptying a fifty-five gallon barrel of garbage at the dumpster when he experienced pain in his back. The plaintiff continued working the rest of the day. After work, the plaintiff went to Southeastern General Hospital's Emergency Room.
2. The plaintiff was first treated by Dr. Jack E. Dunlap who performed an x-ray of the lumbar spine which was negative except for some increased boney density and sclerosis of the left sacroiliac joint. Dr. Dunlap diagnosed the plaintiff with a herniated disc at L5 on the left and recommended conservative treatment. The plaintiff remained out of work for six to eight weeks. The plaintiff asked Dr. Dunlap to refer him to Dr. James E. Rice.
3. Plaintiff's primary treating physician has been Dr. James E. Rice of the Sandhills Orthopaedic and Spine Clinic located in Pinehurst, North Carolina.
4. On February 24, 1992, Dr. Rice discussed the attendant risks of surgery with the plaintiff. After the discussion, the plaintiff informed Dr. Rice he wished to proceed with surgery.
5. On March 26, 1992, the plaintiff was seen by Dr. J. Nicholas Fax, Jr. for a second opinion. Dr. Fax diagnosed degenerative disc disease of the lumbar spine with no evidence of any significant rupture or bulging. Dr. Fax recommended changing the plaintiff's job rather than performing surgery. On April 15, 1992, Dr. Fax rated the plaintiff at ten (10) percent permanent partial impairment of the back.
6. On May 14, 1992, the plaintiff was seen by Dr. Mark E. Brenner for a third opinion. Dr. Brenner found evidence of mild degenerative facet arthropathy of L5-S1 with a mild retrolisthesis at the same level and recommended alternative therapeutic procedures.
7. On September 1, 1992, the plaintiff was seen by Dr. Daniel J. Miller who agreed with Dr. Rice and felt that the plaintiff had a subtle retrolisthesis at L4-5. Dr. Miller felt the plaintiff should undergo surgery if he was prepared to accept the attendant risks associated with surgery.
8. On November 3, 1992, the plaintiff underwent a lumbar decompression and fusion and implant of a bone stimulator to enhance fusion. On October 11, 1993, Dr. Rice removed the bone stimulator.
9. On November 15, 1993, plaintiff was released to return to light duty with the defendant-employer with a recommendation for no lifting greater than 10 pounds; limited bending and stooping; frequent changes of position and flexible hours. to start at two to four hours per day.
10. On November 17, 1993, based upon these restrictions, plaintiff was returned to work scraping wax build-up from underneath and around a waxing machine.
11. In the capacity of wax scraper, plaintiff utilized a 5-foot long scraper in which he would frequently jab to loosen the wax build-up. On occasion, plaintiff would have to get on his hands and knees in order to reach the wax build-up under the machine. Clearance between the floor and the machine was approximately 5 inches and the length of the machine was approximately 10 to 11 feet. Plaintiff was allowed to take frequent breaks and was not monitored in regard to his job performance.
12. After working approximately 4 days in this capacity, on November 22, 1993, plaintiff suffered an exacerbation of his back pain and was transported by emergency squad from the defendant-employer's plant to Southeastern General Hospital emergency room.
13. Plaintiff was seen by Dr. Rice on November 24, 1993 who continued plaintiff on light duty restrictions of 2 hours per day under the previous restrictions of November 15, 1993.
14. Plaintiff was seen again by Dr. Rice on December 16, 1993 complaining of the same degree of back pain with no change.
15. The plaintiff saw Dr. Rice next on January 5, 1994. On said date, Dr. Rice increased the plaintiff's hours from two to four hours per day as tolerated. The plaintiff was able to take frequent breaks.
16. On January 19, 1994, Dr. Rice found the plaintiff to have reached maximum medical improvement and rated the plaintiff at thirty (30%) percent permanent partial impairment of the back.
17. On January 28, 1994, the plaintiff felt severe pain in his back while engaged in his employment duties. The plaintiff described his back as "locking up" and had his wife pick him up from work.
18. On January 31, 1994, plaintiff was seen by Dr. Rice and complained of having a lot of back pain and spasms which were worse than they had been previously. It was Dr. Rice's opinion on January 31, 1994 that plaintiff would most likely not be able to continue the type of job he was performing and that plaintiff would continue to have significant problems with his back. It was Dr. Rice's opinion that plaintiff would continue under the restrictions of November 15, 1993 and that these restrictions would be long term in nature. Plaintiff was provided a note which indicated plaintiff would be unable to work until further notice and to return to the Clinic in April of 1994.
19. On February 6, 1994, Deborah Hoffman faxed a letter to Dr. Rice which contained several job descriptions which were purportedly within the restrictions of November 15, 1993 which defendant-employer was willing to offer plaintiff. Dr. Rice approved all job descriptions with the exception of the wax scraper.
20. On February 14, 1994, plaintiff had a telephone conversation with Marie Gibson, personnel manager with defendant-employer, in which plaintiff was informed that Dr. Rice had approved certain job descriptions and that plaintiff should return to work no later than February 28, 1994. During this conversation plaintiff made Ms. Gibson aware that at that time plaintiff was in too much pain to attempt returning to work. By letter dated February 15, 1994, plaintiff was advised by Ms. Gibson in writing that Dr. Rice had approved certain jobs and plaintiff was provided a list of the jobs and told if he did not return to work on February 28, 1994 plaintiff would be terminated from his employment.
21. On February 15, 1994, Dr. Rice sent a letter to the plaintiff stating he would not require the plaintiff to perform the wax cleaning job but did state the other six positions were within the plaintiff's restrictions.
22. The plaintiff telephoned Dr. Rice's office to set up a return appointment and was informed that he was to return to work. The plaintiff did not return to work.
23. On February 24, 1994, Ms. Hoffman scheduled an appointment with Dr. Rice for the plaintiff. The plaintiff failed to attend the scheduled appointment.
24. On February 28, 1994, the plaintiff was advised to return to work by defendant-employer. The plaintiff failed to report for work on February 28, 1994. The plaintiff was contacted by letter for failing to report to work but failed to respond to defendant-employer's letter.
25. Ms. Hoffman made an appointment with Dr. Rice for March 2, 1994 for the plaintiff. The plaintiff failed to attend the scheduled appointment.
26. On March 16, 1994, an appointment was scheduled with Dr. Rice's office and the plaintiff failed to attend.
27. Plaintiff at all times indicated to Ms. Gibson that due to pain he was unable to return to employment on February 28, 1994 but that he would be willing to attempt any of the jobs listed once he felt he was physically able to return to work.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows
CONCLUSIONS OF LAW
1. On July 18, 1989, the plaintiff sustained an injury by accident arising out of and in the course of his employment, in that he injured his back during a specific traumatic incident of his assigned job duties. N.C. Gen. Stat. § 97-2(6).
2. The plaintiff had an average weekly wage of $411.00 per week which yields the maximum compensation rate of $274.01. N.C. Gen. Stat. § 97-29(5).
3. As a result of his injury by accident, the plaintiff is entitled to temporary total disability compensation at the rate of $274.01 per week from October 4, 1989 through November 15, 1993. The plaintiff has failed to produce medical evidence that he is physically incapable of work in any employment. Said amount of temporary total disability benefits having already been paid, no further temporary total benefits are due the plaintiff. N.C. Gen. Stat. § 97-29; Russell v. Lowes Product Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993).
4. As a result of his injury by accident, the plaintiff is entitled to temporary partial disability compensation at a varying rate per week from November 15, 1993 through March 31, 1994. Said amounts of temporary partial benefits have already been paid. The plaintiff has failed to return to work, therefore no further temporary partial disability benefits are due the plaintiff at this time. N.C. Gen. Stat. § 97-30.
5. As a result of his injury by accident, the plaintiff is entitled to permanent partial disability compensation for ninety (90) weeks as a result of the thirty (30) percent permanent partial impairment rating of his back. N.C. Gen. Stat. §97-31(23).
6. The plaintiff is entitled to the payment of all medical expenses incurred as a result of his injury by accident to the date of this Award. N.C. Gen. Stat. § 97-25.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following
AWARD
1. The defendants shall pay permanent partial disability compensation to the plaintiff at the rate of $274.01 per week for a period of ninety (90) weeks as a result of the thirty (30) percent permanent partial impairment rating of his back. Said compensation is to be paid to the plaintiff in a lump sum. This Award is subject to the reasonable attorney fee hereinafter approved.
2. The defendants shall pay all medical expenses incurred as a result of his injury by accident to the date of this Award.
3. A reasonable attorney fee in the amount of twenty-five (25) percent of all compensation due the plaintiff is hereby approved for the plaintiff's counsel. Said amount shall be deducted from the amounts due the plaintiff and forwarded directly to the plaintiff's counsel.
4. Defendants shall pay the costs.
 S/ ________________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ _______________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _______________________ THOMAS J. BOLCH